UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ronald Green,
Plaintiff

vs

Case No. C-1-08-249
(Beckwith, J.; Hogan, M. J.)

Officer William Bauer, et. al.,
Defendants

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 50), Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 51), Defendants' Reply to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 56), and Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment and Jury Demand (Doc. 57).

Plaintiff is a former prisoner of the Southern Ohio Correctional Facility ("SOCF") who has brought this action pursuant to 42 U.S.C. § 1983, asserting claims for excessive use of force, and failure to protect in violation of the Constitution. Plaintiff alleges these events occurred while he was incarcerated at SOCF. Plaintiff was released from prison on July 22, 2009.

Plaintiff alleges that on January 26, 2008, he was assaulted by Defendants Bauer and Shepherd while being escorted from his cell. Plaintiff claims that he was injured in this assault and that Defendants Workman, Warren and Warden Voorhies failed to protect him.

**BACKGROUND**

Plaintiff's recitation of the facts leaves much to be desired. For this reason, the Court will re-state the facts as set forth in SOCF's Use of Force Investigation report. (*See* Doc. 50, Ex. A, Attachment 1). On January 26, 2008, Defendants Bauer and Shepherd were conducting a search of cell-block K-2 where Plaintiff was housed. Plaintiff began yelling and threatening members of the Special Response Team ("SRT"). Defendants Bauer and Shepherd were directed to escort Plaintiff to J-2, a segregation unit. Plaintiff initially refused to be handcuffed, requesting to speak with a lieutenant. Once Lieutenant Workman arrived at Plaintiff's cell and directed him to "cuff up," he complied. Upon being escorted from K-2 block, Plaintiff became hostile, threatening Defendant Bauer and attempting to head butt him. Plaintiff stopped walking and attempted to lie down on the

floor. After getting Plaintiff to his feet, Defendants Bauer and Shepherd escorted Plaintiff to J-2 and placed in a strip cage.

Plaintiff contends that, upon entering K-Corridor, Defendant Bauer called him a "nigger" and began hitting him in the face. Plaintiff alleges that Defendant Shepherd hit him in the back of the head. Plaintiff claims that Defendants continued to beat him until they reached Control Center 3, at which point he was thrown to the ground. Plaintiff claims another officer hit him in the face; however he is unable to identify that officer. Plaintiff alleges that all three officers kicked him and struck him as he lay on the floor. Plaintiff claims that he was then picked up and taken to J2. After the officers left the area, Plaintiff was examined by Nurse Julia Hall while in the strip cage. Plaintiff then alleges that the officer in J2 told Nurse Hall that Plaintiff was fine and to instructed her to leave. Plaintiff claims that his face was bleeding and he needed to sign up for sick call the following day due to injuries to his finger, neck and elbow.

Defendants contend that Plaintiff continued to be disruptive as they proceeded through K-Corridor and that he threatened to kill Defendant Bauer. Defendants claim that Plaintiff attempted to head butt Defendant Bauer and that, once they reached Control Center 3, Plaintiff stopped walking and attempted to lie down on the floor. Defendants state that they assisted Plaintiff to his feet and proceeded into J2 where Plaintiff was placed in the strip cage. Defendants then left the area. Defendants assert that the only use of force employed in escorting Plaintiff to J2 was a Technique 3 (outside wrist turn) which was necessary to control Plaintiff. They deny using racial slurs against Plaintiff, striking him or throwing him to the floor.

Nurse Hall was interviewed with respect to her medical examination of Plaintiff. The Medical Exam Report, indicates that no injuries or distress was observed. (Exhibit A, Attachment 1, 1/26/08 Medical Exam Report, Green). She stated that she did not see any blood or bruising on Green. (Exhibit A, Attachment 1, Use of Force Committee Report at 2). The Medical Exam Report also indicates that Plaintiff told Nurse Hall that he had not sustained any injuries during the incident. (Exhibit A, Attachment 1, 1/26/08 Medical Exam Report, Green). Similarly neither Defendant Bauer nor Shepherd were found to have sustained any injuries, despite Plaintiff's allegation that they struck him repeatedly with their fists. (Exhibit A, Attachment 1, Medical Exam Reports, Bauer and Shepherd).

The medical records also show that Plaintiff did not see medical staff until more than a week later, on February 5, 2008, for report of shoulder pain. Noting a physical deformity, Plaintiff received ibuprofen and an x-ray. (Exhibit A, Attachment 2, Plaintiff's Medical Record, Interdisciplinary Progress Notes). The x-ray results indicated that Plaintiff's elbow was normal. (Exhibit A, Attachment 2, Plaintiff's Medical Record, Corrections Medical Center Results).

Plaintiff also stated that, as a result of the incident, he sustained injuries to his fingers.

(Deposition of Ronald Green. at 20-21)[1]. Medical records show that Plaintiff did not ask to be seen by medical staff for anything related to his finger until April 15, 2008, at which time he told medical staff that he had injured his finger approximately two months previously and that he had just re-injured it during recreational activities. (Exhibit A, Attachment 2, 4/15/08 Medical Exam Report, Green, at p 30).

Plaintiff alleges that Lieutenant Workman knew of the impending assault and did not prevent it from occurring. (Doc. 4, Complaint at p.8). Plaintiff claims that it was Defendant Workman's failure to personally accompany him and Defendants Bauer and Shepherd to J-2 that allowed for the attack on Plaintiff. (Id at pp.3-4). Plaintiff also alleges that Major Warren and Warden Voorhies were deliberately indifferent to his safety, and failed to protect him from the alleged assault of January 26, 2008. Plaintiff claims that he filed complaints to both Defendants Warren and Voorhies against Defendant Bauer 19 months prior to the alleged incident in January of 2008, but that both Defendants failed to take any action against Defendant Bauer. (Doc. 4 at pp. 5-6). However, it does not appear that Plaintiff filed a grievance or exhausted the administrative grievance procedure with respect to his claims against Warren and Voorhies. (Doc. 50, Exhibit A, Coleman Decl. at ¶5).

## OPINION

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

---

[1] While Defendants cite to Plaintiff's deposition testimony, to date no deposition has been filed with the Court.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## Plaintiff's Claims Against Defendants Warren and Voorhies Should be Dismissed

Under 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act (PLRA), a prisoner confined in any jail, prison or other correctional facility may not bring an action challenging "prison conditions" under 42 U.S.C. § 1983 or any other federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is undisputed that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court. *Jones v. Bock*, 127 S.Ct. 910, 918-19 (2007)(citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). However, the Supreme Court in *Jones*, has recently concluded that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints. *Jones*, 127 S.Ct. at 921. Moreover, the Supreme Court has held that nothing in the PLRA "imposes a 'name all defendants' requirement along the lines of the Sixth Circuit's rule in *Burton v. Jones*, 321 F.3d 569, 575 (2003). As such, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 923.

Finally, the Supreme Court has held that the PLRA does not require dismissal of the entire complaint when an inmate has failed to exhaust some, but not all, of the claims included in the complaint. *Id.* at 923-26 *abrogating Jones Bey v. Johnson*, 407 F.3d 801, 806 (6th Cir. 2005)(holding that the PLRA requires total exhaustion). Thus, when a prisoner files a civil-rights complaint containing exhausted and unexhausted claims, the prisoner can proceed with his exhausted claims despite the dismissal of his unexhausted claims for failure to exhaust." *Owens v. Keeling*, 461 F.3d 763 (6th Cir. 2006) (citing *Spencer v. Bouchard*, 449 F.3d 721, 726 (6th Cir. 2006); *Burton v. Jones*, 321 F.3d 569, 574 n. 2 (6th Cir. 2003); *Hartsfield v. Vidor*, 199 F.3d 305, 309-10 (6th Cir. 1999)). *See also Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006). Federal courts should not prematurely adjudicate the merits of a prisoner's claims until the exhaustion requirement has been satisfied. *Brown*, 139 F.3d at 1104. "When a prisoner's complaint contains both exhausted and unexhausted claims, the unexhausted claims should be dismissed without prejudice while the exhausted claims are allowed to proceed." *Bell*, 450 F.3d at 654 (citing *Spencer*, 449 F.3d at 726; *Burton*, 321 F.3d at 574 n. 2; *Hartsfield*, 199 F.3d at 309-10).

Ohio Administrative Code § 5120-9-31 sets forth a three-step grievance procedure for inmates housed in Ohio prisons for grievances against all personnel other than the Warden or Inspector of Institutional Services. First, an inmate initiates the grievance procedure by filing an informal complaint with the prison official whose area of responsibility is most related to the grievance. Ohio Admin. Code § 5120-9-31(J)(1). If the inmate is dissatisfied with the informal complaint response, or if there has been no response to the complaint, the inmate may file a Notification of Grievance form with the Institutional Inspector. Ohio Admin. Code § 5120-9-

31(J)(2). If this second step does not provide satisfactory results, the inmate may file an appeal with the office of the Chief Inspector of the Ohio Department of Rehabilitation and Correction. Ohio Admin. Code § 5120-9-31(J)(3). The Chief Inspector's written response to the inmate's appeal is the final decision on the grievance. For all complaints regarding the Warden or Inspector of Institutional Services, the inmate must file a grievance directly to the office of the Chief Inspector, and the Chief Inspector's decision is final. Ohio Admin. Code § 5120-9-31(L).

In the instant case, it appears that Plaintiff has failed to exhaust his administrative remedies with respect to his claims against Defendants Warren and Voorhies. (*See* Doc. 50, Ex. A, Coleman Decl. at ¶5). Plaintiff offers no evidence to the contrary. Because Plaintiff has clearly not exhausted his administrative remedies with respect to his failure to protect claims against Defendants Warren and Voorhies, his claims must be dismissed without prejudice as against these Defendants.

Plaintiff's Claims Against Defendant Workman Should Be Dismissed

The Eighth Amendment prohibits the infliction of cruel and unusual punishments. It is well settled that the conditions under which a prison inmate is confined and the treatment he receives while incarcerated are subject to Eighth Amendment scrutiny. *Helling v. McKinney*, 113 S.Ct. 2475 (1993). Once the state incarcerates a person against his will and restrains his liberty so that he is unable to care for himself, the Eighth Amendment imposes on the state and its agents a corresponding responsibility for the inmate's safety and well being. *Id.* at 2480.

To state an Eighth Amendment claim against prison officials based on their failure to protect him from attack by other inmates, plaintiff must allege facts showing that defendants' conduct amounted to "deliberate indifference" to a known risk of harm to plaintiff. *Farmer v. Brennan*, 511 U.S. 825 (1994). *See also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Marsh v. Arn*, 937 F.2d 1056, 1060-61 (6th Cir. 1991); *Walker v. Norris*, 917 F.2d 1449, 1453-54 (6th Cir. 1990). A prison official may be held liable for his failure to protect inmates from attacks by other inmates only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id.* at 835; *Gibson*, 963 F.2d at 853. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* Moreover, liability will not be found where a prison official actually knew of a substantial risk of harm to an inmate if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844.

Liability under § 1983 cannot be premised on the doctrine of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A supervisor cannot be held liable unless there is evidence he directly participated in or encouraged the specific incident of misconduct. *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir, 1994); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.),

5

*cert. denied*, 469 U.S. 845 (1984). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421; *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). Where a supervisor is found to have abandoned the specific duties of his position, such as adopting and implementing a particular operating procedure, liability is direct, not vicarious. *Taylor v. Mich. Dept. of Corrections*, 69 F.3d 76 (6th Cir. 1995). "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 1763 (1999). The fact that a supervisor denied an administrative grievance and failed to remedy allegedly unconstitutional behavior is insufficient to support a claim under §1983. *Shehee*, 199 F.3d at 300. *See also Bellamy*, 729 F.2d at 421.

In the present case, Plaintiff has alleged no personal involvement by Defendant Workman in the alleged January, 2008 incident. Plaintiff has failed to allege how Defendant Workman was involved in the actions he complains about in this case. Thus, it appears that Plaintiff has named Lieutenant Workman as a defendant because of the supervisory positions he holds. However, *respondeat superior* does not apply to § 1983 claims and may not serve as a basis for liability regarding Defendant Workman. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992), *cert. denied*, 509 U.S. 903 (1993).

## Plaintiff's Claims Against Defendants Bauer and Shepherd Should be Dismissed

The Eighth Amendment prohibition against cruel and unusual punishment governs an inmate's claim of excessive force. *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir. 1995), *cert. denied*, 115 S.Ct. 2269 (1995); *Cornwell v. Dahlberg*, 963 F.2d 912, 915-916 (6th Cir. 1992). To state a claim for excessive force, the inmate must establish that the force was applied maliciously and sadistically to cause harm rather than in a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, 501 U.S. 1, 7 (1992); *Pelfrey*, 43 F.3d at 1037; *Caldwell v. Moore*, 968 F.2d 595, 599-601 (6th Cir. 1992). In making this determination, a court must consider the reasons for the use of force, the type and amount of the force used, and the extent of the injury inflicted. *See Hudson*, 501 U.S. at 7; *Whitley v. Albers*, 475 U.S. 312, 320-322 (1986); *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).

Not every intrusion on a prisoner's bodily integrity will rise to the level of an Eighth Amendment violation, even if it appears in retrospect that the degree of force used was unreasonable and, thus, unnecessary. *Whitley*, 475 U.S. at 319; *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parrish*, 800 F.2d at 604.

An inmate may suffer a violation of his Eighth Amendment rights even though he did not suffer a serious injury at the hands of corrections officers. *Hudson*, 501 U.S. at 9-10. The Eighth Amendment does not prohibit a *de minimis* use of force "provided that the use of force is not of a

sort 'repugnant to the conscience of mankind.'" *Id.* at 10. What constitutes a *de minimis* use of force depends upon the circumstances of each case. "[T]he core judicial inquiry is . . . whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. For example, a guard who needlessly beats a handcuffed, submissive prisoner causing bruises, swelling, loosened teeth, and a cracked dental plate inflicts injuries that are more than *de minimis* for Eighth Amendment purposes. *Id.* at 10. *See also Moore v. Holbrook*, 2 F.3d 697 (6th Cir. 1993).

In the present case, Plaintiff claims he was kicked and was repeatedly struck by Defendants' fists. However, the evidence submitted does not support Plaintiff's contentions. The Medical Exam Report indicates no injuries sustained by Plaintiff or Defendants Bauer and Shepherd. It is axiomatic that Defendants could not repeatedly strike Plaintiff without sustaining some injury to their hands nor could Plaintiff escape injury. (*See* Doc. 50, Ex. A, Attachment 1, Medical Exam Reports, Bauer and Shepherd; 1/26/08 Medical Exam Report, Green).

The Sixth Circuit recently reviewed a claim of excessive force involving minor injuries in *Lockett v. Suardini*, 526 F.3d 866 (6th Cir. 2008). In that case, two corrections officer restrained the plaintiff-prisoner following the prisoner's misconduct hearing during which he admittedly became "very angered and upset." The prisoner admitted he resisted the officers, verbally threatened them, and bit the hand of one of the officers while being escorted back to his cell. The Court of Appeals found that the inmate's aggressive behavior justified the use of some amount of force. The Court also found that the inmate's own assertions indicated a minimal amount of force was applied by the officers. According to the plaintiff, the officers were successful only in "snatch[ing]" him out of his chair in the hearing room, "shov[ing]" him out of the hearing room, "grabb[ing]" him around the left jaw and throat, and bending back two of his fingers. *Id* at 876. The Court found that "[s]hoving, grabbing, and bending back two of plaintiff's fingers also required only minimal force and was reasonably related to the need for forcibly bringing [the plaintiff] under control and returning him to his cell." *Id.* The Court further noted that, "[t]his conclusion is reinforced by the fact that Lockett, by his own account, suffered at best only 'minor lacerations and cuts,' and that undisputed evidence showed no dislocation or fracture in his hand." *Id.* The Court held that the corrections officers' minimal application of force, together with the prisoner's minor injuries, did not rise to a level of an Eighth Amendment claim.

As in *Lockett*, the evidence here, when viewed in the light most favorable to Plaintiff, indicates that Defendants' use of force was both minimal and reasonably related to bringing an unruly inmate under control. Plaintiff was admittedly uncooperative in response to several direct orders to "cuff up." Medical records indicate that Plaintiff presented no injuries as a result of the alleged assault. While Plaintiff claims he was assaulted and suffered multiple injuries as a result, he has presented no evidence to support such allegations. Defendants Bauer and Shepherd's statements are consistent which each other, stating that Plaintiff was being disruptive and denying that they assaulted Plaintiff or used racial slurs against him. Moreover, the Medical Exam Report and Nurse Hall's testimony are consistent with Defendants' version of events. Thus, a reasonable jury could conclude that Defendants' actions were taken in a good faith effort to restore order or

discipline within the prison. Accordingly, we find that Defendants' *de minimis* use of force does not support an Eighth Amendment claim. *See Moore*, 2 F.3d at 700-01 (6th Cir. 1993).

Defendants are Entitled to Qualified Immunity

Government officials, including prison officials, "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Black v. Parke*, 4 F.3d 442, 444 (6th Cir. 1993), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001).

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two pronged analysis: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" and, if so, (2) Was the right clearly established? *Saucier*, 121 S.Ct. at 2156.

A constitutional right is "clearly established," thereby precluding the application of qualified immunity, if "the law [is] clear in regard to the official's particular actions in the particular situation." *Black*, 4 F.3d at 445, quoting *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir.), *cert. denied*, 112 S.Ct. 187 (1991). *See also Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir.), *cert. denied*, 116 S.Ct. 524 (1995). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 121 S.Ct. at 2156, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Saucier*, 121 S.Ct. at 2156.

In light of our finding above that Plaintiff has failed to establish a constitutional violation against any of the Defendants, we find that Defendants are entitled to qualified immunity.

8

## IT IS THEREFORE RECOMMENDED THAT

1) Defendants' Motion for Summary Judgment (Doc. 50) be GRANTED.

2) Plaintiff's Complaint be DISMISSED and this case be TERMINATED upon the Court's docket

3) The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of this Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 3/23/10

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☒ Agent ☐ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery |
| 1. Article Addressed to:<br><br>Ronald C Green<br>727 Enroc Drive<br>Dayton, OH 45408 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7002 3150 0000 8389 8145 |
| PS Form 3811, August 2001 | Domestic Return Receipt  102595-02-M-1540 |